UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


JMAR EXPRESS, INC. &
CHRISCAT LEASING, INC.                                             PLAINTIFFS

CIVIL ACTION NO: 4-10 CV-1231

CATERPILLAR, INC., PACCAR, INC.,
and PETERBILT OF MEMPHIS, INC.                                     DEFENDANTS


## SECOND AMENDED COMPLAINT

Plaintiffs JMAR Express, Inc.  and CHRISCAT Leasing, Inc., by and through their

attorneys, Belew, Bell & Brissey and Brian G. Brooks, for their Second Amended Complaint

against the Defendants plead and allege as follows:

1.      Plaintiffs JMAR Express, Inc. and CHRISCAT Leasing, Inc. are Arkansas

corporations with their principal places of business in White County, Arkansas.

2.      Defendant Caterpillar, Inc. Is a Delaware corporation with its principal place of

business at 100 North East Adams Street, Peoria, Illinois 61629.

3.      Defendant PACCAR, Inc. is a Delaware corporation, which has a division

Peterbilt Motors Company, and with its principal place of business at 777 106th Avenue N.E.,

Bellevue, Washington 98004.

4.      Defendant Peterbilt of Memphis, Inc. is a Tennessee corporation with its principal

place of business at 1761 East Brooks Road, Memphis, Tennessee 38116.

## FACTS

5.      Plaintiffs JMAR Express, Inc. and CHRISCAT Leasing Inc. have purchased

trucks from Defendant Peterbilt of Memphis, Inc. for many years.

6.      The business model for Plaintiffs includes trading or selling its trucks in operation and purchasing new trucks every 2½ to 3 years.  This business model maximizes revenue and minimizes operational costs.

7.      In the ordinary business cycle, on or about October 13, 2006, Plaintiff CHRISCAT Leasing, Inc. purchased from Defendant Peterbilt of Memphis, Inc. seven (7) 2007 Peterbilt brand tractor trucks.  On or about November 8, 2006, Plaintiff purchased from Defendant Peterbilt of Memphis, Inc. seventeen (17) additional 2007 Peterbilt brand tractor trucks.  On or about November 27, 2006, Plaintiffs purchased from Defendant Peterbilt of Memphis, Inc. fourteen (14) additional 2007 Peterbilt brand tractor trucks (cumulatively "the 2007 Trucks").

8.      Plaintiff CHRISCAT Leasing, Inc. leased the 2007 Trucks to Plaintiff JMAR Express, Inc.

9.      The engines in the trucks described above did not perform to Plaintiffs' satisfaction, requiring significant maintenance and repairs.  In response to Plaintiffs' complaints, through Ms. Glenda Martin Plaintiffs' President and CEO, about the 2007 trucks, Russell L. Cobb who was the District Sales Manager of the Southeast Region of Peterbilt Motors Company, a Division of PACCAR, Inc., Dave Kirwan, who was the Regional Manager of the Southeast Region of Peterbilt Motors Company, and R. L. Rutherford, who was the Vice President of Peterbilt of Memphis, Inc., (collectively the "Peterbilt representatives") came to the office of Plaintiff JMAR Express, Inc. in Searcy, Arkansas and met with Plaintiffs' employees Glenda Martin and Lannie Martin.  The purpose of this meeting was to entice Plaintiffs to trade the 2007 trucks and purchase new trucks being sold by the Peterbilt representatives.

10.      In the meeting, the Peterbilt representatives proposed that Plaintiffs trade the 2007

Trucks and purchase new Peterbilt trucks with Caterpillar engines, despite that the timing of the proposed trade was outside the ordinary trade cycle.  The specific enticement used was that the Caterpillar engine would not suffer the defects Plaintiffs were experiencing with the 2007 truck engines.

11.     The Peterbilt representatives assured the Plaintiffs that the purchase of the new Peterbilt trucks with Caterpillar engines would solve Plaintiffs engine problems.

12.     Also in the meeting, the Peterbilt representatives assured Plaintiffs that the Caterpillar engines they encouraged Plaintiffs to purchase were compliant with current United States Environmental Protection Agency ("EPA") regulations, that the engines were reliable, that any problems with Caterpillar-made engines had been resolved, and that waiting to purchase the next phase of Caterpillar-made engines would cost $10,000.00 more per engine because of the changing EPA regulations.  The Peterbilt representatives suggested the Plaintiffs contact Caterpillar to confirm their assurances that Caterpillar had resolved its engine problems. Plaintiffs contacted Caterpillar through its agent/dealer Riggs Caterpillar in Little Rock and were again assured by Riggs' agent or employee Doug Anders that the Caterpillar problems had been resolved.  Mr. Anders testified in his deposition that he relied on information obtained from the Caterpillar dealer network and from Riggs'official Caterpillar service representative Mr. Greg Haider.  In other words, Mr. Anders communicated to Plaintiffs the official Caterpillar position regarding the engine.  This information was false.  In fact, the problems with the engine were so severe that Caterpillar had decided to remove itself from this market.

13.     In addition to the above information obtained from Caterpillar through Mr. Anders, Plaintiffs had access to and were aware of representations in other forms from Caterpillar, such as on Caterpillar's web site, that its engine was reliable and serviceable.  These

representations were false and misleading.  The engine was not reliable and serviceable, and in fact was so troublesome that Caterpillar decided to leave the market.

14.      The representations made by the Peterbilt and Caterpillar representatives were false.  Moreover, at the time the Peterbilt and Caterpillar representatives made the representations to Plaintiffs, they were aware that the Caterpillar engine was suffering from serious and significant performance problems and were not performing in the manner the Peterbilt and Caterpillar representatives told Plaintiffs they were performing, Peterbilt, PACCAR and Caterpillar had all been informed by previous purchasers of trucks with this engine that the engine was suffering significant performance deficiencies.  Caterpillar, in fact, discontinued making any engine of this sort due to its inability to remedy the performance problems.

15.      The representations made by the Peterbilt and Caterpillar representatives were the reason Plaintiffs elected to trade the 2007 Trucks outside the ordinary trade cycle.

16.      On or about April 20, 2009, Plaintiffs purchased from Defendant Peterbilt of Memphis, Inc. ten (10) 2010 Peterbilt brand tractor trucks with Caterpillar engines.  On or about September 22, 2009, Plaintiffs purchased from Defendant Peterbilt of Memphis, Inc. twenty-seven (27) additional 2010 Peterbilt tractor trucks with Caterpillar engines (cumulatively the "2010 Trucks").

17.      Plaintiff CHRISCAT Leasing, Inc. leased the 2010 Trucks to Plaintiff JMAR Express, Inc.

18.      Beginning with the very first delivery of 2010 Trucks, the Caterpillar engine did not perform as represented and the Peterbilt and Caterpillar representatives failed to respond or remedy the problems.  In fact, the performance problems suffered by the 2010 trucks were worse than the performance problems suffered by the 2007 trucks.  The representations made by the

Peterbilt and Caterpillar representatives to Plaintiffs were, thus, wholly false, misleading, deceptive and unconscionable.

## COUNT I

### BREACH OF EXPRESS & IMPLIED WARRANTIES - 2010 TRUCKS

19.    Plaintiffs adopt and incorporate all the allegations set forth in previous sections above.

20.    Plaintiffs purchased and leased the 2010 Trucks to be used for trucking and freight services and this fact was known to Defendants Peterbilt of Memphis, Inc., PACCAR, Inc., and Caterpillar, Inc. at the time of purchase.

21.    Defendant PACCAR, Inc., by and through its division Peterbilt Motors Company, manufactured the 2007 Trucks and expressly warranted to Plaintiffs that the trucks would be free from defects in materials and workmanship during the time and mileage set for the in the Warranty Schedule and appearing during normal commercial use and service.

22.    Defendant Caterpillar, Inc. manufactured the engines of the 2010 Trucks and warranted to Plaintiffs that the engines would be free from defects.

23.    Plaintiffs purchase and leased the trucks to be used for trucking and freight services and this fact was known to Defendants Peterbilt of Memphis, Inc., PACCAR, Inc. and Caterpillar, Inc. at the time of purchase.

24.    At the time of the acceptance of the 2010 Trucks, Plaintiffs did not know and could not have known that the 2010 Trucks had defects and were non-conforming for the purposes for which they were purchased.

25.    The 2010 Trucks and their engines have numerous defects which cause an unreasonable number of mechanical problems, including but not limited to regeneration related

problems, an unreasonable number of breakdowns incidental and consequential damages.

26.     The non-conformity of the 2010 Trucks is of such a nature that it has substantially impaired the value to Plaintiffs and caused Plaintiffs financial damage.

27.     Defendants Peterbilt of Memphis, Inc., PACCAR, Inc, and Caterpillar, Inc. knew or should have known at the time of sale that the 2010 Trucks had the defects.

28.     Plaintiffs timely notified Defendants Peterbilt of Memphis, Inc., PACCAR, Inc., and Caterpillar, Inc. of the non-conformity and Defendants failed and refused to correct the non-conformity.

29.     On or about May 20, 2010, Plaintiffs revoked acceptance of the trucks as allowed by Arkansas Code §4-2-608 and Plaintiffs are entitled to damages as allowed by Arkansas Law.

30.     Defendants Peterbilt of Memphis, Inc., PACCAR, Inc., and Caterpillar, Inc. failed and refused to pay Plaintiffs for their damages.

31.     Pursuant to Arkansas Code Annotated §4-2-715, Plaintiffs are entitled to recover from Defendants Peterbilt of Memphis, Inc., PACCAR, Inc., and Caterpillar, Inc., the purchase price of the 2010 Trucks and incidental and consequential damages incurred by Plaintiffs as a result of their purchase of the trucks in an amount in excess of that necessary for federal-court diversity juridiction.

## COUNT II

## VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

32.     Plaintiffs adopt and incorporate all the allegations set forth in previous sections above.

33.     Plaintiffs, as corporations who purchased goods, are consumers under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Arkansas Code Annotated §4-88-101 et.

seq.

34.     Defendants Peterbilt of Memphis, Inc., PACCAR, Inc., and Caterpillar, Inc. are corporations subject to liability under ADTPA.

35.     The ADTPA prohibits any false, deceptive or unconscionable practice in business commerce or trade.  Defendants Peterbilt of Memphis, Inc., PACCAR, Inc., and Caterpillar, Inc. violated ADTPA by their actions directed toward Plaintiffs, including but not limited to their employees and agents, the Peterbilt Representatives and the Caterpillar representatives, and Caterpillar through its web site and other publications, making false representations as to the characteristic and quality of the 2010 Trucks, including their engines, emissions and regeneration systems, as prohibited by Arkansas Code Annotated §4-88-107(a) and §4-22-108(1).

36.     Defendants Peterbilt of Memphis, Inc., PACCAR, Inc., and Caterpillar, Inc. further violated ADTPA when their employees and agents, the Peterbilt Representatives and the Caterpillar representatives, and Caterpillar through its web site and other publications, failed to disclose information concerning the 2010 Trucks, including their engines, emissions and regeneration systems, which was known at the time of the purchase and such failure to disclose the information was intended to induce Plaintiffs into the purchase which they would not have entered into had the information been disclosed, as prohibited by Arkansas Code Annotated §4-88-107(a)(10) and 4-88-108(2).

37.     As a result of Defendants Peterbilt of Memphis, Inc, PACCAR, Inc. and Caterpillar, Inc.'s violation of ADTPA, Plaintiffs suffered financial loss and damages in an amount in excess of that necessary for federal-court diversity jurisdiction.

## COUNT III

## FRAUD

38.     Plaintiffs adopt and incorporate all the allegations set forth in previous sections above.

39.     Defendants Peterbilt of Memphis, Inc., PACCAR, Inc., and Caterpillar, Inc. knew the engine and emission systems in the 2010 Trucks were defective and had a duty to disclose the fact that the defects existed.  The Peterbilt and Caterpillar Representatives committed fraud when they concealed and/or failed to disclose the existence of the defects to Plaintiffs.

40.     The existence of the defects in the 2010 Truck engines was material and the Peterbilt Representatives and Caterpillar concealed the defects with intent to induce Plaintiffs to purchase the 2010 Trucks.

41.     The fraudulent acts of the Peterbilt Representatives, Defendants, Peterbilt of Memphis, Inc., PACCAR, Inc., and Caterpillar, Inc. caused Plaintiffs financial loss and other damages.

42.     Plaintiffs Demand is in excess of federal jurisdictional limits.

43.     Plaintiffs request a trial by jury.

## PUNITIVE CLAIM

44.     Plaintiffs adopt and incorporate all the allegations set forth in previous sections above.

45.     Defendants knew or ought to have known in light of the circumstances that their conduct described above would naturally and probably result in injury or damage to Plaintiffs yet they continued the conduct nevertheless.  Defendants were aware of the problems with the Caterpillar engines based on their history with them.  They knew that the representations they were making were false or misleading.

46.     Given that Defendants knew that their conduct was likely to cause injury to

Plaintiffs yet continued it anyway, it was malicious or taken in such reckless disrgard of the consequences that malice may be inferred.

47.     Plaintiffs are entitled to an award of punitive damages in an amount in excess of that necessary for federal-court diversity jurisdiction due to Defendants conduct.

WHEREFORE, Plaintiffs pray that they be granted judgment against the Defendants for damages incurred as a result of the purchase and operation of the 2010 trucks, for reasonable attorney fees, for the cost laid out and expended, and for any and all other relief to which Plaintiffs are entitled.

  /s/ John M. Belew_____
John M. Belew, #73006
Laura W. Brissey, #2004180
BELEW, BELL & BRISSEY
500 East Main, Suite 301
Batesville, Arkansas 72501
(870) 793-4247
(870) 793-2055 - Fax
John@belewandbell.com

Brian G. Brooks, 94209
Brian G. Brooks, Attorney at Law, PLLC
P.O. Box 605
Greenbrier, Arkansas  72058
(501) 733-3457
bgblawfirm@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that service of the above and foregoing was made on counsel below by filing it on the CM/ECF system on this _31st_ day of May, 2012.

Michael J.  Emerson
BARBER LAW
FIRM  2700 Regions
Center
400 West Capitol Avenue
Little Rock, Arkansas 72201

Stephen Bingham
Cross, Gunter, Witherspoon & Galchus, P.C.
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72501

Deirdre C.  McGlinchey
McGlinchey Stafford
1811 Tower Drive, Suite
A Monroe, LA 71201

_/s/ John M. Belew_____