**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

JMAR EXPRESS, INC., *et al*.                                                    PLAINTIFFS

v.                                              4:10CV01231-BRW

PETERBILT OF MEMPHIS, INC.,  *et al*.                                    DEFENDANTS

<u>ORDER</u>

Pending is a Motion for Summary Judgment by Defendants PACCAR, Inc. and Peterbilt

of Memphis, Inc. (Doc. No. 105).  Plaintiffs have responded,[1] and PACCAR and Peterbilt of

Memphis have replied.[2]

Also pending is a Motion for Summary Judgment by Defendant Caterpillar, Inc.

("Caterpillar") (Doc. No. 149).  Plaintiffs have responded,[3] and Caterpillar has replied.[4]

Defendant Caterpillar also filed a Motion to Dismiss Newly Asserted Claims (Doc.

No. 167).  Plaintiffs have responded,[5] and Caterpillar has replied.[6]

For the reasons set out below, the Motion for Summary Judgment by Defendants

PACCAR and Peterbilt of Memphis (Doc. No. 105) is DENIED without prejudice.

Caterpillar's Motion for Summary Judgment and Motion to Dismiss the New Claims

Against It (Doc. Nos. 149, 167) are DENIED without prejudice.

**I.      BACKGROUND**

---

[1]Doc. Nos. 132, 155.

[2]Doc. No. 136.

[3]Doc. No. 175.

[4]Doc. No. 183.

[5]Doc. No. 177.

[6]Doc. No. 184.

This case involves allegedly defective tractor trucks.  Plaintiffs JMAR Express Inc. and CHRISCAT Leasing, Inc. (collectively "JMAR") are trucking companies that purchased trucks from Defendant Peterbilt of Memphis, Inc. ("POM").[7]  Defendants[8] manufacture and sell engines and trucks.  Peterbilt Motor Company ("Peterbilt"), an unincorporated division of Defendant PACCAR, Inc., ("PACCAR") designs and manufactures truck chassis and assembles trucks at its various plants.  PACCAR's Peterbilt trucks had engines manufactured by either Defendant Cummins, Inc. or Defendant Caterpillar, Inc.  POM is an independently owned and operated Peterbilt dealership in Memphis, Tennessee.  JMAR sued Defendants for breach of express and implied warranties; violations of the Arkansas Deceptive Trade Practices Act; and fraud.[9]

This case was filed in the Circuit Court of White County, Arkansas,[10] and later removed to this Court based on diversity jurisdiction.[11]

In October, 2006, JMAR bought 38 Peterbilt trucks (the "2007 Trucks") with Cummins engines from POM.  JMAR operated those trucks from 2006 through 2008.[12]  By the fall of 2008,

---

[7]Plaintiff CHRISCAT Leasing, Inc. bought the trucks from POM and then leased the trucks to Plaintiff JMAR Express, Inc.

[8]Defendants Cummins Mid-South, LLC and Defendant J.A. Riggs Tractor Company were dismissed.  Doc. Nos. 25, 46.   Plaintiff settled with Defendant Cummins, Inc.  Doc. No. 104.

[9]Doc. No. 162.

[10]Case No. Civ-2010-679-1.

[11]Doc. No. 1.

[12]Doc. Nos. 151, 176.

JMAR was dissatisfied with the performance and service of the Cummins engines and considered buying new trucks with different engines.[13]

Glenda Martin is president and sole shareholder of both CHRISCAT Leasing, Inc. and JMAR Express, Inc.[14]  R.L. Rutherford was a vice-president and sales associate for POM and JMAR's long-time contact and salesman.  Glenda Martin informed POM of the problems with the Cummins engines; POM apparently notified PACCAR / Peterbilt representatives of Ms. Martin's complaints.[15]   In response, R.L. Rutherford and other Peterbilt representatives[16] (the "Peterbilt representatives") went to JMAR's Searcy, Arkansas, office -- allegedly to entice JMAR to trade in the 2007 Trucks and buy new trucks being sold by the Peterbilt representatives.[17]  At the time, PACCAR offered its Peterbilt trucks with the choice of a Cummins or Caterpillar engine.[18]

Plaintiffs allege that the Peterbilt representatives proposed that JMAR trade in its 2007 Trucks and buy Peterbilt trucks with Caterpillar engines.  The Peterbilt representatives allegedly assured JMAR that: the Caterpillar engines would solve JMAR's engine problems; the Caterpillar engines were compliant with the current Environmental Protection Agency ("EPA") regulations; any problems with Caterpillar engines had been resolved; and that waiting to purchase the next phase of Caterpillar engines would cost $10,000 more per engine because of

---

[13]*Id.*

[14]Doc. Nos. 151, 176.

[15]Doc. No. 60.

[16]Russell Cobb was the District Sales Manager of the Southeast Region of Peterbilt Motors Company, a division of PACCAR.  Dave Kirwan was the Regional Manager of the Southeast Region of Peterbilt Motors Company.

[17]Doc. No. 60.

[18]Doc. Nos. 151, 176.

changing EPA regulations.[19]  JMAR maintains that in addition to the representations by the

Peterbilt representatives, it was aware of representations from Caterpillar, such as those on

Caterpillar's web site, among others, that its engine was reliable and serviceable.  JMAR

maintains that because of the contact by Peterbilt representatives, JMAR considered buying

other Peterbilt trucks.[20]

In March, 2009, JMAR bought from POM 10 Peterbilt Model 389 trucks with C15

engines manufactured by Caterpillar.[21]  In September, 2009, JMAR bought 27 more of the same

trucks (collectively, the "2010 Trucks") from POM.  The C15 engines included a component

after-treatment regeneration device (the "ARD" or "ARD head").  Caterpillar's ARD head is a

proprietary component and process -- often referred to as the "regen" process -- that reduces

soot, and other particles, in truck exhaust gases so that the engines comply with the 2007 EPA

emissions standards.

JMAR received Caterpillar's standard limited warranty covering the engine ("Caterpillar

Warranty") along with each of the trucks it purchased.  The Limited Warranty contained the

following provision (which was set out in all capital letters, bold type):

**THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT CATERPILLAR EMISSION-RELATED COMPONENTS WARRANTIES FOR NEW ENGINES, WHERE APPLICABLE. REMEDIES ARE LIMITED TO THE PROVISION OF MATERIAL AND SERVICES, AS SPECIFIED HEREIN.  CATERPILLAR IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

---

[19]Doc. No. 162.

[20]Doc. No. 176.

[21]Doc. Nos. 151, 176.

**CATERPILLAR EXCLUDES ALL LIABILITY FOR OR ARISING FROM ANY NEGLIGENCE ON ITS PART OR ON THE PART OF ANY OF ITS EMPLOYEES, AGENTS OR REPRESENTATIVES IN RESPECT TO THE MANUFACTURE OR SUPPLY OF GOODS OR THE PROVISION OF SERVICES RELATING TO THE GOODS.**[22]

Glenda Martin acknowledged that she had received the Limited Warranty, and that she read it and knew what it provided.[23]

JMAR recieved from POM and PACCAR a Peterbilt Motors Company Warranty Agreement ("POM Warranty"), which reads, in relevant part:

Peterbilt Motors Company warrant directly to you that the Peterbilt vehicle identified below will be free from defects in materials and workmanship during the time and mileage set forth in the Warranty Schedule (dated 07/08) and appearing under normal commercial use and service. **This warranty does not apply to the engine and emission related equipment**, engine brake, automatic transmission, tires, wheels and/or rims, or fifth wheel, **which are warranted directly to you by their respective manufacturers**,[24] items not installed by the Peterbilt plant at the time of manufacture, or trade accessories. This warranty extends only to you, the First Purchaser.

Your sole and exclusive remedy against Peterbilt Motors Company and the selling Peterbilt Dealer arising from your purchase and use of this vehicle is limited to the repair or replacement of defective materials or workmanship at Authorized U.S. and Canadian Peterbilt Dealers to the extent of Peterbilt Motors Company's obligations under the Warranty Schedule. The maximum time and mileage limits in the Warranty Schedule being in the Date of Delivery to the First Purchaser as shown below and apply to the times and mileage when then vehicle is brought into an authorized U.S. or Canadian Peterbilt Dealer for correction of warrantable defects.[25]

---

[22]Doc. No. 149.

[23]Doc. Nos. 151, 176.

[24]Emphasis added.

[25]Doc. No. 105.

The POM Warranty continued, in bold print:

> **Except for the above warranty, Peterbilt Motors Company and the selling Peterbilt Dealer make no other warranties, express or implied, and make NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**[26]

It further read:

> It is agreed that Peterbilt Motors Company and the selling Peterbilt Dealer shall not be liable for incidental or consequential damages including, but not limited to: loss of income; damage to vehicle, attachments, trailers and cargo; towing expenses; attorney's fees and any liability you may have in respect to any other person.[27]

Lannie Martin, JMAR's director of operations and maintenance,[28] signed the POM

Warranty directly under the following language:

> I, the undersigned, have read the above warranty agreement including the attached schedule and understand and accept its terms and acknowledge receipt of a copy of the agreement (3 pages).[29]

> Additionally, POM's Buyer's Order forms, which were signed by Glenda Martin,

included a POM disclaimer of warranty, which read:

> THE ONLY WARRANTIES ON THE VEHICLE SOLD UNDER THIS BUYER'S ORDER ARE THOSE WARRANTIES MADE BY THE MANUFACTURER. THE SELLER, PETERBILT OF MEMPHIS, INC., HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPOALIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND PETERBILT OF MEMPHIS, INC., NEITHER ASSUME NOR AUTHORIZED ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF THIS VEHICLE. THIS DISCLAIMER BY THE SELLER, PETERBILT OF MEMPHIS, INC. IN NO WAY AFFECTS THE TERMS OF THE MANUFACTURER'S WARRANTY.

---

[26]Doc. No. 105.

[27]*Id.*

[28]*Id.*

[29]*Id.*

The Buyer's Order form disclaimer of warranties was in all capital letters, in a font the same size or smaller than much of the other print around it, and there was no bold type.

JMAR operated the 2010 Trucks for around two years, but contends that the Caterpillar engine did not perform as represented beginning with the first delivery of the 2010 Trucks.[30] The 2010 Trucks were repeatedly in the shop at J A Riggs Tractor Company, which was authorized to make Caterpillar repairs, but allegedly to no avail.  JMAR contends that Peterbilt and Caterpillar representatives made false, misleading, deceptive, and unconscionable misrepresentations and omissions about the Caterpillar engines, as well as failed to respond or remedy the engine problems.  Defendants deny the allegations.

## II.    DISCUSSION

### A.    The Motions for Summary Judgment

#### 1.    Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[31]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[32]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an

---

[30]See Doc. No. 162; Doc. No. 167, Ex. A. at 152.

[31]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[32]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[33]   Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[34]   I must view the facts in the light most favorable to the party opposing the motion.[35]   The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[36]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[37]

## 2.      Caterpillar's Motion for Summary Judgment

Caterpillar's motion for summary judgment focuses on the Caterpillar Warranty.  Caterpillar maintains that its disclaimer conforms to the requirements of Arkansas law[38] and was effective to exclude the warranties JMAR has asserted.  Caterpillar also maintains that because

---

[33]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[34]*Id.* at 728.

[35]*Id.* at 727-28.

[36]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[37]*Anderson*, 477 U.S. at 248.

[38]Ark. Code Ann. § 4-2-316 provides, in part: "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."

JMAR cannot identify an incident where a warranty claim was rejected and because Caterpillar

is not liable for incidental or consequential damages, JMAR has no valid claim against it.

Under the Caterpillar Warranty, the buyer's remedies are limited to repair or

replacement.  The Caterpillar Warranty also limited the buyer's remedies by excluding implied

warranties of merchantability and fitness for a particular purpose, as well as excluding

consequential damages.  Arkansas law allows such limitations, "unless circumstances cause the

exclusive or limited remedy to fail of its essential purpose."[39]  An example of a circumstance that

causes a limited remedy to fail of its essential purpose is when repeated repairs do not resolve a

problem -- a limited warranty "fails whenever the warrantor, given the opportunity to do so, fails

to correct the defect within a reasonable period."[40]

Caterpillar points out that in *Turman v. Case Corporation*,[41] the Eighth Circuit noted that

a repair or replace clause similar to that in the Caterpillar Warranty "does not fail of its essential

---

[39]*Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc*., 301 Ark. 436, 441 (1990); Ark. Code Ann. § 4-2-709.

> (1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,
>> (a) the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
>> (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this subtitle.
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

[40]*Great Dane*, 301 Ark. at 441.

[41] No. 99-1946, 1999 U.S. App. Lexis 29355 (8th Cir. Nov. 9, 1999)

purpose so long as repairs are made each time a defect arises."[42]  In the District Court, Turman

argued that despite numerous repairs, certain defects were not corrected.[43]  The District Court

noted the rule in Arkansas -- "if the buyer is deprived of the substantial value of his bargain, the

limitation of remedy is deemed to have failed of its essential purpose"[44] -- then went on to hold

that "fourteen breakdowns over a six-month period spread among seven different tractors does

not constitute the loss of 'the substantial value of [the plaintiff's] bargain.'"[45]  In reaching its

conclusion, the District Court considered the following questions:

> could a jury find that the repairs required an unreasonable amount of time so as to
> conclude that the warranties had failed of their essential purposes; or were there so
> many required repairs that the tractors were out of commission for an unreasonable
> amount of time; or did the number of repairs coupled with the time required for the
> repairs keep the buyer from receiving the intended benefit of his bargain?[46]

It is undisputed that JMAR cannot identify any warranted repair that they presented to

Caterpillar that was not accepted and completed in accordance with the Caterpillar Warranty.[47]

It appears, however, that the same components and systems required repair repeatedly, even if

the repair, at first blush, apparently had been made.  In opposition to Caterpillar's Motion for

Summary Judgment, JMAR points out that for the 37-truck fleet, there were 697 claims during

---

[42]*Turman v. Case Corp*., No. 99-1946, 1999 U.S. App. Lexis 29355, at *2 (8th Cir. Nov. 9, 1999) (citing *Transport Corp. of Am., Inc. v. Int'l Bus. Machs. Corp., Inc.*, 30 F.3d 953, 959 (8th Cir. 1994) (applying Minnesota law to uphold limited remedy of replace or repair warranty where there was only a single failure that was repaired.)).

[43]*Rick Turman v. Case Corporation*, No. J-C-482, Doc. No. 20 (E.D. Ark. Mar. 3, 1999).

[44]*Id*. (*citing* Waterson, 13 Ark. App. 77 (1984)).

[45]*Id*.

[46]*Id*.

[47]Doc. Nos. 151, 176.

the 26.4 months that the trucks were in use -- or about 18.8 claims per truck.[48]  Of the 697

claims, 592 related to emission components and systems.  JMAR alleges that it notified

Defendants about the defects, but the defects were not corrected.[49]

JMAR asserts that where an exclusive remedy deprives the purchaser of a substantial

benefit of its bargain, the entire range of remedies is available, citing *Caterpillar Tractor Co. v.*

*Waterson*[50] in support of its position.  In *Waterson*, a bulldozer had a constant vibration. The

warranty disclaimed all remedies beyond repair and replacement.  After numerous attempts at

repair, the vibration was not remedied.  The limited warranty in that case failed in its essential

purpose, and the plaintiff was allowed to seek damages for lost profits.[51]

Here, the record reflects that 697 claims were made over 26.4 months in use, and 592

claims involved the emission components and systems.  This means that each engine had about

16 claims for emissions-related problems, and that a truck was in repair for emissions-related

issues for an undetermined amount of time about once every 6 weeks.  This is twice as frequent

as the breakdowns in *Turman,* and the record contains no data how long the repairs took.  There

is a question of fact as to whether the Caterpillar Warranty failed of its essential purpose.

Accordingly, Caterpillar's Motion for Summary Judgment (Doc. No. 149) is DENIED without

prejudice.

### 3.      PACCAR and POM's Motion for Summary Judgment

---

[48]Doc. No. 176.

[49]Doc. No. 162.

[50]13 Ark. App. 77, 82 (1984).

[51]*Id*. at 85-86.

### a.   The Warranty Claims

PACCAR and POM contend that any implied warranties of merchantability and fitness for a particular purpose were specifically excluded under the POM Warranty.  As set out above, limiting remedies is allowed under Arkansas law, if the disclaimer is in writing and is conspicuous.  Conspicuous, as used in the Uniform Commercial Code,

> means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it.  Whether a term is "conspicuous" or not is a decision for the court.  Conspicuous terms include the following: (A) a heading in capitals equal or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.[52]

The warranty disclaimer and limitations of liability were set out in bold type, and, in part, capital letters.  I find that the disclaimer and limitations were conspicuous.

The POM Warranty further provided that "[t]his warranty does not apply to the engine and emission related equipment . . . , which are warranted directly to you by their respective manufacturers . . . ."[53]

Lannie Martin signed the Warranty Agreements just underneath the language: "I, the undersigned have read the above warranty agreement including the attached schedule and understand and accept its terms and acknowledge receipt of a copy of the agreement (3 pages)."  Glenda Martin testified that she was aware that PACCAR / Peterbilt did not warrant the engines.

---

[52]Ark. Code Ann. § 4-1-201(b)(10).

[53]Doc. No. 105.

JMAR knew at the time it singed the warranty agreements what the POM Warranty covered, and what it did not.[54]

JMAR raises the timing of the presentation of the warranties.  In *Mack Trucks of Arkansas, Inc. v. Jet Asphalt & Rock Company*,[55] the Arkansas Supreme Court found a disclaimer of liability ineffective because the warranty was provided after the trucks in question had been delivered.  The Arkansas Supreme Court pointed out that

> [t]he very purpose of the statutory requirement is that any limitation be brought to the attention of the contract is made.  An attempted limitation at the time of delivery long after a contract of purchase is signed does not accomplish this purpose, being a unilateral attempt of a party to limit its obligations.[56]

Courts have noted an issue with timeliness where the warranty was revised two years after the product was delivered,[57] for example.  Here, the POM Warranty for the first 10 trucks notes a date of sale of April 20, 2009, with an identical delivery date.[58]  The POM Warranty for the remaining 27 trucks indicates a date of sale of September 22, 2009, and a delivery date of September 30, 2009.[59]  A one-week lag between the sale date and delivery date of 27 trucks is not the type of delay about which the Arkansas Supreme Court was concerned in *Jet Asphalt*.  Further, JMAR received the same POM Warranty with the first 10 trucks, and was aware of the limitations in the POM Warranty.

---

[54]Doc. Nos. 151, 176.

[55]246 Ark. 101 (1969).

[56]*Id.* at 108-09.

[57]*Boshears v. Certainteed Corp.*, No. 4:05-CV-01052-WRW, 2007 U.S. Dist. Lexis 34338, at *19   (E.D. Ark. May 10, 2007),

[58]Doc. No. 105, Ex. 2.

[59]*Id.*

JMAR also sued for breach of verbal express warranties allegedly made by the Peterbilt Representatives at their meeting with JMAR.  PACCAR and POM contend that the Arkansas Parole Evidence Rule bars the introduction into evidence any prior agreement to contradict the terms of the warranty agreement.[60]  The Buyer's Order Forms set out:

> This Order contains the entire agreement affecting this purchase and no other agreement, understanding, or representation of any nature concerning same has been made or entered into or is part of this transaction, except the conditional sales contract in writing executed by the undersigned buyer,[61] as purchaser thereunder and such other documents as may be necessary to carry out the terms of this agreement.[62]

The Buyers Order Forms also contain a warranty disclaimer, which had a bold heading was in all-caps and the same or smaller font size as the type around it.  It was not in bold type.  I find that the disclaimer and limitation in that provision is not conspicuous, and thus ineffective.

The POM Warranty is a written contract between the parties and unambiguously explains the disclaimers and limitations.  PACCAR and POM contend that this should be the end of the story, that evidence of earlier statements should barred by the parole evidence rule.   "The parole evidence rule requires, in the absence of fraud . . . . the exclusion of all prior or contemporaneous, oral or written evidence that would add to or vary the parties' integrated written contract, which is unambiguous."[63]  Plaintiffs allege fraud, and it appears that the alleged fraudulent statements and the alleged verbal warranties are intertwined.  There are facts in dispute about the alleged misrepresentations, so granting summary judgment on the warranty claims at this point would be inappropriate.

---

[60]*Bone v. Resco, Inc.*, 774 F.2d 235 (8th Cir. 1985).

[61]

[62]Doc. No. 105, Ex. 1.

[63]*Walt Bennet Ford, Inc. v. Dyer*, 4 Ark. App. 354, 355 (1982).

b.        **JMAR's Revocation Claim**

On May 20, 2010, JMAR sent POM, PACCAR / Peterbilt, and Caterpillar a letter that purported to revoke acceptance of the 2010 Trucks.[64]  JMAR apparently continued to use the trucks for around a year after it sent its letter revoking acceptance of the trucks.  Continued use after revocation is not the norm.[65]  But Arkansas courts have found that post-revocation use will not invariably cancel revocation.[66]  "The issue is determined on a case by case basis, with the reasonableness of post-revocation use being the underlying consideration, taken in conjunction with a consideration of all the other elements necessary to effect a justifiable revocation."[67]  There remain unresolved issues of fact about JMAR's post-revocation use of the 2010 Trucks, which makes summary judgment inappropriate.

c.        **The Fraud and Arkansas Deceptive Trade Practices Claims**

Under Arkansas law, a plaintiff must show the following to establish fraud: (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence up which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and damage suffered as a result of the reliance.[68]  Under Rule 9(b) of the Federal Rules of Civil Procedure, fraud must be plead specifically enough to answer the "who, what, where, when, and how" of the

---

[64]Doc. No. 105, Ex. 12.

[65]*Ozark Kenworth, Inc. v. Neidecker*, 283 Ark. 196 (1984).

[66]*Id*. at 201.

[67]*Id*.

[68]*Goforth v. Smith*, 338 Ark. 65 (1999).

15

alleged fraud.[69]  The high degree of notice "is intended to enable the defendant to respond

specifically and quickly to the potentially damaging allegations."[70]

JMAR's Complaint pleads fraud sufficiently to satisfy Rule 9.

The  Arkansas Deceptive Trade Practices Act[71] ("ADTPA") focuses on consumer

protection in connection with trade practices.[72] The ADTPA makes "[e]ngaging in any  . . .

unconscionable, false, or deceptive act or practice in business, commerce, or trade . . . "

unlawful.[73] The Arkansas Supreme Court defined an unconscionable act as "an act that 'affronts

the sense of justice, decency, or reasonableness.'"[74]  Any person who suffered actual damage or

injury because of a violation of the ADTPA has a private cause of action to recover damages.[75]

"Actual damage or injury is sustained when the product has actually malfunctioned . . . ."[76]

The basis of JMAR's fraud and ADTPA claims are alleged omissions and

misrepresentations about the 2010 Trucks.  There are facts in dispute as to what JMAR or

---

[69]*Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2010) ("[T]he complaint must allege 'such matters as the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'") (internal citations omitted).

[70]*Id.*

[71]Ark. Code Ann. §§ 4-88-101 to 4-88-503.

[72]See *id.*

[73]Ark. Code. Ann. § 4-88-107(a)(10).

[74]*Baptist Health v. Murphy*, 365 Ark. 115, 128 (2006) (citing Black's Law Dictionary 1561 (8th ed. 2004)).

[75]Ark. Code Ann. § 4-88-113(f). If appropriate, attorneys fees may also be awarded under this section.

[76]*Wallis v. Ford Motor Co.*, 362 Ark. 317, 328 (2005) (holding that diminished value of a product is not actual damage). See also *FMC Corp. v. Helton*, 360 Ark. 465, 482-483 (2005) (finding that damages for mental anguish are separate from actual damages).

PACCAR knew about the Caterpillar engines at the time of the alleged omissions and misrepresentations, as well as to what misrepresentations and omissions were made, which makes summary judgment on these claims inappropriate.

**B.    Caterpillar's Rule 12(b)(6)  Motion to Dismiss New Claims**

JMAR's Second Amended Complaint ("Complaint") includes allegations of fraud and violations of the ADTPA against Caterpillar.  Caterpillar asks that these newly-asserted claims be dismissed.  Again, the basis of JMAR's fraud and ADTPA claims are alleged omissions and misrepresentations about the 2010 Trucks.

**1.    Dismissal Standard**

In ruling on a Rule 12(b)(6) motion to dismiss, a court "accept[s] as true all of the factual allegations contained in the complaint, and review[s] the complaint to determine whether its allegations show that the pleader is entitled to relief."[77]  All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.[78]  A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery."[79]  A complaint need contain only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[80]  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[81]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

---

[77]*Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

[78]*Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).

[79]*Schmedding v. Tnemec Co. Inc.*, 187 F.3d 862, 864 (8th Cir. 1999).

[80]*Id.* (quoting Fed. R. Civ. P. 8(a)).

[81]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[82]

Under the *Twombly* "plausibility standard," the allegations in Plaintiff's Complaint must be evaluated to determine whether they contain facts sufficient to "nudge[] [his] claims across the line from conceivable to plausible."[83] A complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.[84]

Under Rule 12(d) of the Federal Rules of Civil Procedure, if, on a motion under Rule 12(b)(6), matters outside of the pleadings are presented to and not excluded by the court, the motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56.[85]

### 2.   Fraud

The elements of fraud under Arkansas law and the federal pleading standard are set out above.

JMAR alleges that after the meeting with the Peterbilt Representatives, JMAR contacted Doug Anders.  Mr. Anders's deposition testimony reflects that Caterpillar had problems with the regen system in the past, but he learned in training what Caterpillar did to improve those functions.[86]  Mr. Anders further testified about what he told Mr. Martin:

---

[82]*Id.* at 555 (citations omitted).

[83]*Id.* at 570.

[84]*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

[85]FED. R. CIV. P. 9; *Ashanti v. City of Golden Valley*, 666 F.3d 1148 (8th Cir. 2012).

[86]Doc. No. 167, Ex. E at 15.

"The thing I told him at that time is that Caterpillar has improved the regeneration system.  Caterpillar called it an EPA2007 update.  In other words, they changed a lot of hardware."[87]

"They did change a lot of software.  And in that time frame, on the engines that were on – on order . . . were already EPA2007 updated at the factory."[88]

"I wouldn't think I gave him a comfort.  I think I more or less gave him the information of the question that he asked."[89]

Mr. Anders told Mr. Martin that, based on what he knew, Caterpillar had resolved the regen problems, that the updated engines would be delivered in new trucks, and that this would resolve the problem.[90]  Mr. Anders gained his knowledge about Caterpillar updates from Greg Haider, his Caterpillar service representative in Dallas, Texas.[91]

Caterpillar asserts that Mr. Anders's representations are mere puffing, or statements of opinion that cannot stand as the basis for a fraud claim.  I disagree.  An opinion is "a statement concerning a matter not susceptible of accurate knowledge."[92]  Mr. Anders's statements -- explaining what changes Caterpillar made in resolving the regen problem, and assuring that the problem had been resolved -- were susceptible of accurate knowledge.  Further, JMAR alleges that Caterpillar concealed problems with the engines.  There are unresolved questions of fact as

---

[87]*Id*. at 18.

[88]*Id*.

[89]*Id*. at 18-19.

[90]*Id*. at 15.

[91]Doc. No. 167, Ex. E 19, 50.

[92]*Delta School of Commerce, Inc. v. Wood*, 298 Ark. 195, 199 (1989) (citing *Grendell v. Kiehl*, 291 Ark. 228 (1987)).

to what was known about the performance of the C15 engine at the time, and as to the alleged misrepresentations and omissions.

Caterpillar next contends that it had no contact with JMAR in the period leading up to JMAR's purchase of the 2010 Trucks.  Caterpillar maintains that Mr. Anders is an employee of JA Riggs Tractor Company -- an authorized Caterpillar repair shop -- not a Caterpillar employee or agent.[93]  Caterpillar offers Mr. Anders's deposition testimony in support of its argument that Anders is not a Caterpillar representative or agent.  But Mr. Anders's testimony is inconclusive. When asked if Riggs is a part of the Caterpillar, Inc. organization, Mr. Anders replied "I do not know."[94]  He then testified that his paycheck comes from Riggs, and that there is a distinction between Riggs, the dealership, and Caterpillar, the manufacturer.[95]  It is unclear from the testimony what type of distinction exists between Riggs and Caterpillar; Mr. Anders's testimony does not exclude the possibility of an agency relationship.  There remain unresolved questions of fact as to Caterpillar's role in any alleged misrepresentations or omissions.

### 3.    Arkansas Deceptive Trade Practices Act

Under the ADTPA, engaging in an unconscionable, false, or deceptive act or business practice is unlawful, as is the use of deception, fraud, or false pretense and the omission or concealment of any material fact when used in connection with the sale of a good.[96]  There remain questions of fact in dispute about alleged misrepresentations and omissions, making it inappropriate to grant Caterpillar's Motion on this point.

---

[93]Caterpillar also point out that JMAR had contact with Greg Haider, a Caterpillar employee, only after it bought the 2010 Trucks.

[94]Doc. No. 167, Ex. E at 64.

[95]*Id.*

[96]Ark. Code Ann. §§ 4-88-107(a)(10); 4-88-108(2).

**<u>CONCLUSION</u>**

The Motion for Summary Judgment by Defendants PACCAR and Peterbilt of Memphis (Doc. No. 105) DENIED without prejudice.

Defendant Caterpillar's Motion for Summary Judgment (Doc. No. 149) and Motion to Dismiss (Doc. No. 167) are DENIED without prejudice.

IT IS SO ORDERED this 3rd day of August, 2012.

/s/  Billy Roy Wilson
UNITED STATES DISTRICT JUDGE